Good morning, ladies and gentlemen. Our first case is Daneshrad v. Trean Group. Mr. Daneshrad. Good morning, Your Honor. My name is Joseph Daneshrad, and I represent the plaintiffs and the appellants in the case. It would help us if you would raise your voice. That microphone – no, don't touch the microphone. The microphone records but doesn't amplify, and this is a big room. Okay. All right. Your Honor, I'm not – I don't know how much this court knows about the options on the future, which is the subject of this litigation, and apparently the trial court thought it was just a simple, you know, you either liquidate or buy protection and you're fine. The options on futures has so many strategies, so many ways that you can adjust your position and stay in the game. You know, there's spreads, straddles, strangles, you know, Mary Prude, covers, color, butterfly, iron condor, iron butterfly, calendar spread. Now, the main thing in this case is that, you know, plaintiffs were deprived of the right to basically trade options futures, which is what they were doing, in the middle of their trading activity by their broker. And the broker had only one job in this case between – was to make sure that the trades are executed through FC Stone. And for some reason, they were not – Mr. Danchard, I have a question for you. Yes. I didn't see any allegation that you made that the broker was responsible for part of your loss. It seems to me that you're making the argument only that the broker is responsible for all of your loss. And I don't know that you need to know all that much about the options trading market to understand proximate cause. And it seems to me that the broker – your relationship changed with the broker and you just withdrew all your money. And then the market turned around, you know, unexpectedly or expectedly, it didn't matter, a month later. And you have some sour grapes here, that you're frustrated. And I understand the frustration, but that doesn't mean that there's proximate cause. No, it's not frustration on our – it just – if Trien had not terminated the relationship, there wouldn't be any liquidation on our side. Right, but couldn't you have taken other actions short of liquidation? No, because we – basically, F.C. Stone said you cannot place new positions, meaning that, you know, the positions that we have, okay, we can liquidate some of it and get something else in place. Right. You know, you can liquidate all of it and, you know, and then get some other positions. You know, that's why I'm saying it's very complicated because the position options are like you can have a, you know, different spreads. You can have different months, expiration dates. Right. And all those things, we were prevented from doing that because they said you cannot – How were you prevented? How was your client prevented from doing that? The client was perfectly free to invest through a different broker and a different futures commission merchant. No, because you have to apply to a broker first. You have to fill out the positions. They have to approve you. You have to take your – Yes. You have to have the trust of somebody willing to deal with your client. Right. What prevented your client from seeking to buy offsetting positions through a different broker? Because it takes time to do that. Of course. You know, it took two weeks. Everything in the world takes time. Everything takes time. Right. But your client didn't try. Well, no. Tried. They said they tried, and they couldn't do it right away. Oh, did they apply to some other introducing broker and get turned down? Yes, there's evidence in the record that they called, and they could not do it right away. Right away. Nothing happens right away. Well, the market happens right away. Every day, the market moves. Well, that's what I said, though. There's no argument. You don't make any argument that they're responsible for part of your losses. It's just all of your losses. Well, it is all. You know, if you had done what Judge Easterbrook – if you'd answered the question by saying, we did – it took time. It took two weeks' time. And we applied. We reduced our risk through another broker. But in that two weeks' time, we lost X amount of dollars. It might be a different case. Yeah. Well, by the time we moved to another account, then we couldn't establish the new positions. If it takes two weeks, we had to liquidate and then transfer the funds, apply to another broker, open up another account, and then deposit the money there and start trading again, which we did. But we had already lost that time period to keep those positions, and we lost. I thought – perhaps you can correct me if I'm wrong – I thought the liquidation status of the account was only for a limited time window. In other words, FC Stone put your account on liquidation status for about 24 hours or so, and then it just required that you meet an additional margin because you went back to FC Stone and said we needed time to transfer our accounts. And they said, okay, so we'll take it off liquidation status, but we were going to – because of the additional risk that we see, we're going to require you to provide additional margins. So at that point in time, you were free to make other trades and try to offset risk, no? No, no. There was no – it was not a temporary one. It was a permanent one. It says you're liquidation only. You cannot do anything else. No, that was the first order from FC Stone. That was the first order. Which was then modified. Right. And we pleaded and said, can you allow us at least to, you know, cover, buy some cover for the positions that we have? And they said, okay, you can buy some cover, but that doesn't mean you can adjust your position. It's just you can buy some cover. And did you try to buy some cover? No, because cover means – okay, the best cover is liquidation. All right? So if your position is sold for $10, now that position has gone $30. If you want to protect your position, you can just pay $30 and buy it, and you're out. There's no risk. Or you can buy $2 or $5, but then still there's a risk, you know. The position that we had was unlimited risk. So we could limit it, but still the next day market goes down, your margin goes up, and then you have to bring more money in. And if you cannot, you get liquidated. But you could have taken an offsetting position to try to at least limit the risk as you were waiting to transfer your accounts. Well, the thing is you limit it, okay, as I said. Market moves every day, and every day you could get margin calls, every day. Even in the middle of the day, market moves 50 points, 100 points, then you have to cover – you have to come up with the money. And if you cannot, it gets liquidated. All right? So that's the problem. But that didn't happen, though. Well, no, the problem is – Because you liquid – your clients liquidated first. Well, yeah, we liquidated first. If you wanted to buy a different position, different strategy. That's what I'm saying. There's so many strategies that you can choose. And we were deprived of using those strategies. We could not do any strategies other than just one strategy. So let's say there's 20 strategies that we were using, and it's very complicated, it's very sophisticated, you know, strategies are options. It's not just, hey, you buy – that's what I'm saying. It's not that it's just simple. And they said, okay, you can only do one strategy, and that's it. You cannot do anything. And they clearly state you cannot put new positions, new positions, meaning you sell it, that's it. You liquidated it. You cannot buy another less risky position and keep it, and that's the issue. And that is the issue of fact. That's what we're saying here. If they want to have the expert, you know, to say that, hey, you know, you could have done all this stuff, that's the main argument here, that this is an issue of fact. And the trial judge, you know, should not be in the position of making that decision, and I don't think this Court of Appeals should be in the position of making this factual decision. It should go to the jury. If the court was the only factual finder and there was a bench trial, I have no problem with it. The court can find and you can find, yeah, well, we think you should have done this and this and that. But that is not the premise of the trial judge to make that decision because you cannot say as a matter of law you don't have any case. Thank you, counsel. Thank you. Mr. Sosnicki. Good morning, Your Honors. Lucas Sosnicki, appearing for the defendants. May it please the Court, I have only one clarifying point and then I'm going to stand on the briefs and have to answer questions. Your Honor, to your point of Mr. Danishra's and plaintiff's option to offset their risk at the time when they were not on liquidation only but only a higher margin, and with respect to their option to go to another broker, I completely agree there's absolutely no evidence in the record that they tried. Could you please raise your voice to the same observation as I made to Mr. Danishra? This is a very big room. I will, Your Honor. Not only is there no evidence that plaintiffs attempted to offset their risk with another brokerage, there's no evidence that they attempted to offset their risk with Stone itself. Now, the communication that Mr. Danishra had referenced as purportedly preventing them from making risk-reducing trades doesn't say you cannot make risk-reducing trades. It says you cannot take on new risk. These were folks who, for the better part of four months, had been dealing directly with F.C. Stone, their clearing broker, trying out, discussing, and contemplating various positions and various strategies to mitigate risk. In that context, there's zero evidence in this case that after having been allowed to continue to trade at a higher margin that they reached out to F.C. Stone, certainly not to Trane, and asked what can we do in this situation to mitigate the risk, to offset our positions. None of that is in the record. Simply put, there's no evidence that they did anything that would support finding approximate causation and the ruling should be affirmed. Mr. Sosnicki, what input, if any, did your client have with regard to Stone's decision to either put the appellants on liquidation status or to later increase the margin requirements? Your Honor, the only input by my clients was informing F.C. Stone that Trane intended to terminate the relationship with the plaintiffs. That was the extent of the communication. Everything else was F.C. Stone. And is there anything in the record that would evidence any discussions between Trane and F.C. Stone with regard to particularly putting the account to liquidation status or taking them off liquidation status and increasing the margin? Your Honor, the only evidence in the record as to liquidation status is Ms. Steubenrauch's testimony that typically when Trane does elect to terminate a relationship with a client, those clients are placed on liquidation only. There's nothing more specific with respect to placing these particular plaintiffs on liquidation only, and there is no evidence in the record regarding the 150% margin determination. That was F.C. Stone's. I see no further questions, so thank you. The case is taken under advisement, and the Court will take a brief recess before calling our second case.